Good morning, your honor. May it please the court. It's difficult to lose a case at the Supreme Court on an issue that matters for what happens down below, but the district court opinion that this court is reviewing is based on Long 1, which is no longer good law. It's no longer good law because of the decision that the Supreme Court unanimously made in FICRE v. FBI. That case dictates what this court must do here, and with regards to the no-fly list pertaining claims. And the rationale in FICRE is on all fours to this case. And this is, I think, the heart of it. Just like in FICRE, the issue that put the case beyond the mootness argument that the government was making was that, quote, it is enough to consider one aspect of Mr. FICRE's complaint. Quote, he contends that the government placed him on the no-fly list for constitutionally impermissible reasons, unquote. That is exactly what Saadiq Long alleges here. Saadiq Long alleges that the reason that he was placed on the no-fly list is because of his belonging to the Muslim community, because of his exercise of his Islamic beliefs, and that is the basis for it. These allegations are well-pled. Look at paragraph 11 of the complaint, where we say that almost every single person on the list is Muslim. That allegation is based on a my eyeballs review of a leaked copy of the watch list, where we determined that over 98% of all names on the watch list are Muslim. Over 99% of the names on the no-fly list are Muslim names. Even if the court just takes the name of Islam's prophet, a third of all entries on the watch list have either the first name or the last name, the name of Islam's prophet. You could look at the allegations on JA 8486 in the Equal Protection Count itself that details extensively how the government utilizes religious profiling, takes into account a person's Islamic religious practices in making those watch list decisions. And FICRE also explicitly rejects the arguments that the government continues to make here. One of the precedents that FICRE does set in its mootness ruling is that the passage of time during litigation is not a basis for their mootness argument. A case, this is from the Supreme Court, a case does not become moot when a defendant suspends his challenged conduct and then carries on litigating for some specified period. This is the second time this case has come before the court and the government comes in here on mootness issue. It's also the second time the government enters this court having recently developed new facts to weaponize their mootness argument. However, this is what the Supreme Court said both in its majority and concurrence in FICRE. It anticipated that these cases would go to discovery. This is what the majority said. Litigating disputes beyond the motion to dismiss stage can present evidentiary challenges for parties and courts alike. That means that this court should remand, it should reverse and remand and allow this case to advance to discovery. The concurrence does emphasize that there is some possibility of future reconsideration of a mootness holding, but it also anticipates discovery. Non-classified information or information obtained in discovery from the plaintiff is what could be used in further proceedings from the, to show the mootness. The consequences of FICRE's holding means that count one, the substantive due process count that is exclusively based on his placement on the no fly list, his prior placement on the no fly list, this court must treat that no fly list claim as if he's on the no fly list. That's what the application of the voluntary cessation doctrine means. It means that he can continue to press the claim even after the government has stopped its listing. With regards to the procedural due process claim, I don't know what the government submitted under seal. They haven't showed me, they haven't told me, and my client has not even received the letter, and he's a long haul truck driver, so might not for some time. But the consequences to his TWIC and Hazmat license, we've already been here too, your honor. Five years ago, the government granted and then denied one of those licenses. And they granted it, and he had it for about a month, from September to October 2020, and then they took it away. And then they let it sit for five years, and just days before this court's hearing, then they did something with the applications, and we don't know what they did with the applications. But the Hazmat license... You would agree that those are not final at this point? No, your honor. We don't know what they did with those applications, your honor. But the... Do you not have the documents? They filed them. No, your honor. We do not have the documents that they filed. My client has not received them. They have not provided them to me directly. I mean, they're on ECF. I think, your honor, they're under seal, your honor. I believe. But they sent them to him, like it has his mailing address here. Your honor, because he's a long haul truck driver, he has not provided them to me. I have not... Do you want me to read it to you, so you can have it? Your honor, I'm a little bit nervous about doing that in open court without having an idea of what it says, because it's been filed under seal. You can respond to the motion to seal. That would help the court. Yes, your honor. But let me do it as like a, if it's been approved, your honor, if it's been approved, still, his watch list placement had an effect on the processing of his hazmat and twit credential. That five year delay was the result of the watch list placement that the Terrorism Screening Center imposed on him almost a decade, or more than a decade ago. Just like the watch list placement resulted in his revocation of the twit credential previously, it can again result in the revocation of these credentials if they've been granted. If they've been denied, then it's a final agency action, certainly, and we've plausibly alleged that these credentials cause him to be screened against the watch list, and denials for people that match against the watch list follow as a matter of course. And so, whatever the TSA did with his TWIC and hazmat licenses, another agency will do with future permits and licenses, in future interactions with the federal government. And that's the heart of the part of his challenge that does not regard voluntary cessation. He is currently on the watch list, and the government has not, at least in public filings, taken the position that he's not on the broader watch list. That broader watch list is going to impact every single interaction he has with the federal government going forward. We have that in the complaints that the TWIC and the hazmat credential were affected by his watch list placement. We also have it in the complaints that this is what they do. The TSA screens people when they apply for licenses and permits against the watch list, just as every other federal agency does. And so, what is in the complaint right now is about TSA, but that's not all that's in the complaint, because the government disseminates his watch list status across the country. It's resulted in Sadek Long's ongoing, repeated stops by the police department in the city that he lives in. And the fact that the police department has entered into a temporary case-specific stipulation does not eliminate the future possibility that either this police department or some other police department, having received from the FBI official notice on their computer as they're pulling somebody over, that the person they're pulling over is a known or suspected terrorist, we know what that police officer is going to do. They're going to approach that encounter much more severely, and that's exactly what happened to Sadek Long. Because of the FBI notice that Oklahoma City Police Department received, he was pulled over repeatedly, at gunpoint, and handcuffed. Did we talk about that sort of thing in El Hadi? Your Honor, the issue in El Hadi was that the court basically treated it as a facial claim. The court said in claims like when you take a roundhouse swing at the watch list, the standard is higher. I take that to mean that when you seek relief for claims, for issues that are beyond the things that happened to you, that creates a facial kind of claim. The procedural due process claim has facial elements, but everything that we're raising here happened specifically to Sadek Long. We're not talking about police stops in general. We're talking about watch list cause police stops that happened to Sadek Long. And the watch list cause police stops that happened to Sadek Long are not speculative. They're not something that happened to somebody else. Also in El Hadi, El Hadi talks about the fact that we haven't showed that this interferes with anybody's line of work. Here, Sadek Long is a truck driver. Truck drivers need a hazmat license to carry even normal- The standing inquiry has to do with whether it's the independent action of a third party, not for the court, right? Well, your honor, the independent action of the third party would regard the traceability element of standing. So if the independent actions of a third party comprise an intervening event, then yes, your honor, I would agree with that legal point that it would break standing. But here, it's very predictable what a local police department will do when the FBI tells it that it's dealing with a known or suspected terrorist and doesn't even pay it the courtesy of telling the police officer whether it's a known terrorist or a suspected terrorist. In that situation, the independent acts of the third party, Oklahoma City Police Department, are predictable. Of course, it's going to take a heavier hand to a police stop involving a known or suspected terrorist than a police stop that they just did for speeding. Similarly- But they didn't do that in every case, right? So if your point is that it's so predictable that it's traceable and redressable by our action, it seems like that would happen in every single instance where he interacted with the police, right? Yeah, and I think Fickrey addresses this point specifically, that this is the defendant's burden, the defendant's burden to show the- To show standing? Well, no, your honor, the standing is there. The standing, we, in that case, the cause of the stop, the cause of the cessation of the Oklahoma City Police Department was another lawsuit filed by Sada Klong. If Sada Klong had not filed that lawsuit, the Oklahoma City Police Department would still be doing exactly what they have been doing. And you all signed a stipulation to stop the conduct, is that correct? A case-specific stipulation that lasts for the duration of that case. Basically, an agreed to preliminary injunction. And just like a preliminary injunction, if granted, would not move the case, we don't think that a stipulation in Oklahoma between SADC and Oklahoma City Police Department would move the case. And even if your honor feels that the issues with Oklahoma City Police Department have been resolved in some kind of way, that still leaves every other police department receiving the copies of the watch list. And Sada Klong, being a truck driver, that's where he works. He works on the road and is subject to those issues. And I think here- So I guess your argument is for some type of perspective or future injury? Understanding? It's both, it's ongoing injury and it's future injury. Well, in terms of the Oklahoma City Police Department, it seems as if that's been resolved by the settlement, right? And then this new policy regarding training and stopping him. Seems like that's been resolved? No, your honor, even after the stipulation, there were additional stops. Because what happens, and this is proliferating throughout the country, local police departments are more and more relying on automated license plate readers. And so they're taking the person completely out of it, and they're just leaving it up to the computers. And the computers themselves are screening people against the watch list and telling officers what to do with the people that they encounter. And I think this quote from Thickray helps here. It's about the passage of time, and I think your honor is getting to this point. It is defendant's burden to establish that it cannot reasonably be expected to resume its challenge conduct. Whether the suit happens to be new or long lingering, and whether, this is the key part, whether the challenge conduct might recur immediately or later at some more propitious moment. That's the issue here, your honor, that these harms could replicate again, as they have previously, and I'll save the rest of my time for rebuttal. Thank you, your honor. Thank you, Mr. Adams. Mr. Ballman. Good morning, your honors. Joshua Waldman from the Department of Justice for the Defendants and Cross-Affiliate. The district court lacks statutory jurisdiction over plaintiff's no flyer's claim. Both the 9th Circuit and the DC Circuit have held that those claims are within the exclusive jurisdiction of the Court of Appeals under section 46110. TSA makes the ultimate decision, and has the authority to make the ultimate decision to maintain a person on the no fly list at the culmination of the redress process. Plaintiff's complaint challenges that TSA final order, and for that reason. But that's not the final order anymore, right? That was the final order, but then TSC issued its own order, and its letter says this replaces the decision made by the administrator. But the plaintiff's complaint, plaintiff's challenge, which he says is not moot, and I can address mootness in a moment, but his challenge is not to the removal. The removal is not an injury. His challenge is to the TSA decision to maintain him on the list. And that decision is a TSA order. It is kind of sticky, right? Because we're told, the Supreme Court told us it's not moot by virtue of being taken off the list. But then the reasons they gave were because they said, well, it's because he's really challenging being placed on the list. Now you can phrase that as placed on or maintained on, right? Or he could be put back on, but the administrator, as I understand it, can't do that. Administrator can't put him back on the list. Only TSC does that. Is that correct? That's correct. But under the theory of mootness, and we don't think the case is moot, but we don't think you need to reach that, and I can address that momentarily. But if you assume that it remains live, what the live challenge would be is to TSA's order, not TSC's order. And for that reason, it's an order that falls under 46.110. And that challenge must be brought in the Court of Appeals. And therefore, the district court lacks statutory jurisdiction. We think you can cleanly resolve this case on backgrounds without reaching mootness. Although I'm happy to address that issue as well. I think that as the DC Circuit held in Moharam, which is the first Court of Appeals to meaningfully interpret FICRA post the Supreme Court's decision. They put challenges into two categories. One which they think fall under FICRA and one which does not. The first set of challenges are people who say that their placement on the watch list is due to some categorically impermissible unconstitutional reason. And the second category are people who merely say the administrative record is not sufficient on the facts to meet the standard as that record exists today. We think that this case belongs in the second, Moharam said that second category. That is not, that claim is moot. Because there is no effective injunctive relief that could preclude the government on a new set of facts. Moharam was a actual petition for review of the administrative decision, right? That properly followed the channeling requirement to take those claims to the DC Circuit. That's correct. And we think that this case should also have. And that's why the court could say, we're just reviewing the administrative record on the decision about this particular individual. It's not a broader challenge saying people are inappropriately placed on the list for discriminatory reasons. Right, but I don't think that it's decision followed from the fact that it was reviewing it under a petition for review as opposed to an appeal from a district court judgment. I think what they were saying is what matters is the nature of the claim. And when the nature of the claim is something that's categorically impermissible, a court can afford effective relief. And the reason for that is a holding that a piece of information cannot be considered by TSA or the agency at all would have effective, preclusive relief going forward. Because it would be just as impermissible in the future as it was in the past. Whereas an assessment about the sufficiency of the evidence would not have that same kind of. But doesn't this case kind of have both? I mean, if we said you have to send this to the Tenth Circuit or the DC Circuit, what would they, who would they order to do what, right? The administrator has not made the final decision in this case anymore. There's a new decision. And what would that court order, who would they order to do something? Right, well, I think there's a lot to that question that I'd like to unpack, because there's a lot of different ways that you could come at it. But the first is to say, in this case, what the plaintiff tried to do, and what they've argued here, is that they're making a categorically impermissible argument, that he was put on the list for impermissible religion or nationality-based reasons. And the district court found that the complaint was utterly devoid of any plausible allegations of that nature relating to this specific plaintiff. He talked a lot about other people and what might happen to them, but he did not specifically relate it to him. And that's different from Fikra, who had an allegation that was plausible in his complaint, that he was put on the list based on religious affiliation, because as he contended in that case, and we're taking his facts as true for the moment, Fikra contended that he was asked in an FBI interview about his attendance at a mosque. And he inferred from that, that his listing status was based on his religion. And the Supreme Court said, therefore, his claim was about constitutionally impermissible conduct that was plausibly alleged and tied to him. We don't have that in this case. So effectively, all we have is a request to review the watch list status, the no fly list status made by the administrator based on the administrative record before him at that time. And that is something that I think falls under Mahara. But again, I don't, although I think that makes the case moot, I think you can just decide it on the statutory jurisdiction question and not reach the mootness question. But Judge Rushing, your question also sort of assumed that we no longer have a final decision from the administrator at this point. I think in the real world, the practical effect, that's correct. But from a mootness point of view, the argument that the claim remains live is a claim challenging the TSA administrator's decision as it existed at that time. And we- I'm not sure about that. I agree it's confusing how mootness and the statutory jurisdiction work together. But I didn't read the Supreme Court as telling us, pretend that this thing that happened in the real world never happened. They're saying that thing happened, but it doesn't moot the claim because it could happen again, right? He could be placed back on the list for the reasons he's complaining about. Yes, but I still think what my understanding is that that would mean that because the claim is live, what that challenge would entail is a challenge to the TSA administrator's decision and not some decision in the past. Which I think that that's true because what I imagine the plaintiff ultimately wants is something that would help him in the future. But an evaluation of the lawfulness of a decision made allegedly ten years ago doesn't necessarily tell you, doesn't provide any relief for what somebody might do today or five years from now on a different record. And I think that's one of our points. And the other thing that I would say is when he filed his complaint, he had not yet exhausted or gone through the redress process at all. And it was by agreement of the parties, including from the plaintiff, the case was stayed for the specific purpose of going through the administrative redress process to obtain a final decision from the TSA administrator. And that's why we think what the challenge is, in fact, is a challenge to that final order. And that is why it belongs exclusively in the Court of Appeals under 46110. I'd also like to sort of address some of the other watch list claims, if I may. On the watch list, you sent us these letters from TSA to the plaintiff. Does the government still contend after those letters that the licensures, the hazmat licensures and TWIC, that those aren't an injury traceable to the watch list? Or does the government changing its position in light of these letters? Well, our argument is modified a little bit, but I think the outcome doesn't change. We still think that the claim fails for lack of standing and on the merits. And I'd like to address that, but before I do, I just want to talk about the factual situation about why things are under seal, because I think you might want to sort of understand what that situation is. So the plaintiff, the TSA issued these letters and sent them by certified first class mail to the plaintiff at his mailing address, as you can see from the letters themselves. Plaintiff is not represented by counsel in those proceedings as he is in this appeal. And for that reason, TSA can't just send them to a lawyer who represents the plaintiff in another matter. So we reached out, when the letters were issued on Friday and Monday, I reached out to opposing counsel and told him of the existence of the letter without describing its contents. Explained that, as I just said, we couldn't just give him the letters, but that he would probably want them. And we provided a form that his client could fill out and sign a return to us, authorizing them to be his representatives in those administrative proceedings, at which point we would send him electronic copies of the letter. But the plaintiff's counsel has not yet responded to that request, so we have not been able to give him that material. Although we would, as soon as he fills out that letter, or of course, plaintiff, as he receives it, is free to turn it over as well. And for privacy reasons, we just didn't want to just put it on the public docket without the plaintiff's consent. We also reached out for plaintiff's consent on that issue and have not received a response. If the plaintiff consents to putting it on the public docket, we have no opposition to doing that or to providing it to plaintiff's counsel. So I just want to make that point absolutely clear. To return to your question about how that affects the outcome of this case, I'll speak in hypotheticals about what the letter might say in order to not break the seal, so to speak. It could really only do three things. One is keep it in similar posture as it is now. In other words, no decision has been made, in which case our arguments are the same. It could grant the applications, in which case the injury, as alleged, sort of disappears and falls out of the case, or it was not granted, it was denied. In that case, my opposing counsel said that that would be a final order. That is not correct. Under the regulations, if the TSA letters did deny, it would be a preliminary determination that the plaintiff would have three levels of administrative appeals. First to the assistant administrator, then to an administrative law judge, and then to a final decision maker, after which there could be review in federal court. Again, under 46.110, because that would be a TSA order. So for one, just to jump to the merits argument, it would not be a final decision, nor would the due process claim, I think, have any chance of success, since there's a lot of process that he could have. This kind of brings us back to your statutory jurisdiction argument, right? If someone is granted or denied one of these licenses, that's a final decision, eventually, once you appeal through it, it's a final decision by the TSA administrator, and that has to be channeled to certain courts, but is there a distinction? Isn't there a distinction between challenging the decision to get the license or not get the license, versus challenging being on the watch list and saying, I shouldn't be on the watch list. And one of the injuries that the watch list causes me is how it affects processing of these licenses. Yes, and we think, I agree that if you're just trying to challenge the watch list as opposed to the decision, that you have a different statutory jurisdictional analysis. But here, the district court didn't rule on that basis, it ruled on an article three standing basis. And our view is, a decision by TSC on the watch list, versus TSA with regard to these applications, are two different decisions by two different agencies under two different standards. And there's a causation and redressability problem for that, which is that one doesn't necessarily, or even likely, cause the other. Is that true? I've looked at the statutes for what TSA considers when it considers whether to grant or deny these licenses, and various security databases are one of the things they consider, isn't it? Yes, but the only reason why, they look at many things. Some of them have nothing to do with any list at all, like a list of disqualifying criminal offenses, although you check a criminal history background list for that purpose. But the only reason why you would look at either the watch list or any other list is to point you to the underlying information or intelligence that might exist about that person, not the status in and of itself. And any judicial order that said, for example, remove someone from the watch list, would not erase or negate the existence of that evidence. TSA would still look at that evidence and still make its own independent determination about whether it met the application standards. So you're saying the government would do whatever it wants to do, no matter what the court rules. That's basically what you're saying. Well, I'm saying that no court ruling about the TSC's decision would necessarily create, would not have any preclusive effect on TSA analyzing the same evidence for a different purpose under a different standard and reaching a different result. You just said exactly what I said. Basically, once you put this albatross around someone's neck without any trial or any due process and no-fly list and impacting and Oklahoma being stopped by police. You're saying that it's on there and so it just stays there or you can look at it? No, Your Honor, what I'm saying is the way you would do it is not by challenging the watch list itself, but if you had a problem with TSA's decision with regard to the hazmat. How many years has this been going on since we put on a no-fly list? How many?  This is just a temporal question, that's all. Right. Not analysis. Yeah, we don't, there's- This is a temporal question, how long? Okay, I can't say that, Your Honor. You don't know from the record how long it's been on the fly list, no-fly list? Because the exact date when someone put on the no-fly list is privileged information, Your Honor. Or it's privileged? Yeah, it's considered law enforcement sensitive and sensitive security information. So that's not part of the record. So you can just label somebody and just say, well, we don't have to tell you, court, why we put him on there. He just has to suffer through being stopped, being ruined his whole life. Well, if you wanted- Is that what you're arguing for the court? No, Your Honor. You just asked me a historical, temporal question. And it's privileged, so I can't say in open court. But if we got to a point where we were actually adjudicating this on the merits, we would file a record, part of which would be under seal, and Your Honor would have access to it, and you would be able to see that exact information. I'm just saying I can't say it publicly because it's privileged information. And so all of these things, none of what we're saying is an argument that things are unreviewable, that you can't have a court look at it. We're just saying that there's certain ways to do it. And what they want to do is effectively have review of TSA's decision, not by challenging TSA's decision, but by challenging TSC's separate and different decision. And our view is, well, that's not going to change TSA's answer. So if you want to change TSA's answer through federal court action, then challenge TSA's decision. When you get a final action, go through the administrative process. And if you don't get the relief you want, file an action in this court or an appropriate court of appeals under 46110, and you'll get judicial review. And if you think that the TSA has made a decision that's unlawful, you can say so. So there's no time limit on when you might make a final decision? No, except, but if they want to, those- So there's no time limit on when you make a final decision, is there? Well, if they think that- Can you answer that? Is that privileged, too? No, I don't think that, I don't, well, ultimately there's a time limit, because- Is there a time limit on when you can make a final decision? There's nothing in the statute of records- The answer is no, there isn't, isn't it? Well- Why don't you just answer the question, rather than just beating around the bush? Your Honor- The answer is no, there is no time limit, is that right? No, Your Honor. Okay, there is a time limit. Well, the plaintiff can bring an action for agency action unlawfully delayed. And if Your Honor comes to the conclusion that the agency is taking too long, you can issue an order. But under the statute regulation, no, there's no time limit. But I will say this, once an initial decision goes out, if the plaintiff wants to forego the administrative remedies, which are not required, he can wait 60 days, and it'll be a final order, and then he can bring an action. So if what the letters we sent out were initial decisions, if that's what it was, he can wait 60 days and file an action. So at this point, he can do that. So if timing is a concern to him, that's a pathway that he can take. Or if it had been a concern to him previously, he could have brought an action for mandamus or agency action unlawfully delayed. And if you thought we were taking too long as a matter of law, you could have ordered us to speed things up. But the plaintiff didn't do that. So our point is not that if you're unhappy with something, we're not saying you never have remedies. You do have remedies, but you have to bring them in the proper way, withstanding and attack the decision that you're actually unhappy with. And not try to end run by getting some other agency's order that you think is going to have some sort of effect on the final action or non-action that you're actually unhappy with. And that's our- Let me ask you a quick question, I guess procedural. If this court was to decide that the district court did not have jurisdiction based on FICRA, then it would need to be transferred to the, I think he's from Oklahoma, so 10th Circuit or the DC Circuit. Which court do we send it to? Well, a couple things. If you thought there was no jurisdiction because of FICRA, I think that would be a mootness holding. In which case you would not transfer it anywhere because the case would be moot. If you agreed with us on the statutory jurisdiction under 46-110, then that issue would arise. And in that case, it's our view that if you agree with us, you should just affirm the dismissal by the district court and not transfer it. The plaintiff has not asked for a transfer from this court in his opening brief, in his reply brief. And it's sort of up to him to do that. So we think the easiest way would just be to say, he hasn't asked for a transfer, the district court didn't have statutory jurisdiction, so we affirm the dismissal. And that's what we think is all you need to do. Well, I guess what I'm asking is if it's not moot. Yes. And the district court does not have jurisdiction, right? Because of the TSA claims. Do we send it to DC Circuit or do we send it to the 10th Circuit? Well, I think if you get to, again, I still think that if you felt that the district court didn't have jurisdiction either as a statutory matter or as an Article III matter, because the plaintiff hasn't requested any transfer, that you don't need to do that. But if you disagree with me and thought, well, I need to transfer it somewhere, I think, we think the best venue would be the DC Circuit. It's the one where both parties, counsel, are close to. And it's the one that is most familiar with handling classified and other privileged evidence of this kind of nature. So that would be the appropriate place to do it. It would be a little bit odd, because I think under its own precedent in Moharam, the case would be moot. So you might want to sort of deal with that question first. But that's where, if you had to transfer it, that's where I would suggest that it go. But again, I do think also it's important to emphasize, in another matter of time, so if you prefer that I not go on, I won't. But I do want to emphasize that the watch list claims are separate from the no fly list claims. And the mootness argument, as it applies to no fly list, there's no mootness argument with respect to the watch list. Those are standing arguments. And the statutory jurisdiction argument that applies to the no fly list claim does not have any application to the watch list claim. Those fail for lack of standing, and they fail on the merits. So those are two different arguments. I just wanted to make that clear. I know that I'm well over my time, so if you don't have any other questions, I'll save the rest for my rebuttal. Thank you, counsel. Thank you. Mr. Abbott. 2011, your honor, that's when we believe Sadek Long was placed on the no fly list. It was in 2011. He found out later that year he was on the no fly list when he tried to visit his grievously ill mother. He tried to travel from Qatar to Oklahoma, and that's how he found out he was on the no fly list. The government sent him to the embassy to not fill out any appropriate paperwork, and it took a public campaign to get him on a plane back to the United States. And so I think that's where I want to start with just the mootness question about the no fly list. And Muharram is explicitly distinguishable from FICRE in this case, because whereas Muharram explicitly, quote, does not challenge the lawfulness of the agency's criteria or its reliance on any category of information, Sadek Long does both of those things. He says that his claim is that there's no, under substantive due process, they would have to use the least restrictive means to further a compelling interest if they are going to deprive him of his right of movement. And they don't need to do that to people that have not been arrested, charged, or convicted of any terrorism related offense. And the fact here is that Sadek Long flew twice while he was on the no fly list. The fact that the government allows people on the no fly list to fly is an indication that it's not the least restrictive means. They administer, it's called a one-time waiver process. They allow people on the no fly list that are stranded abroad to come back to the United States one time on an airplane. Actually, let Sadek do it twice. But if they can do it, if they can do a one-time waiver, then they can do a two-time waiver. If they can do a two-time waiver, they can do a five-time waiver. And so the least restrictive means are evident in what the government's practices are. And we just have allegation after allegation after allegation about the religious profiling that's at the center of this watch list. We catalog 10, 12 examples of the watch list not being used to protect aviation or protect this person or that person, just being used to recruit informants to comprehensively surveil the Muslim community. That's what happened to Sadek. That's what happened to Jonas Fickrey. That's what happened to so many, most of the litigants challenging the no fly list. So for the reasons that Muharrem sets aside, that you can bring a claim that the no fly list is categorically impermissible facially, that's what we're marching through. With regards to 46.110, we are challenging the Terrorism Screening Center's decision to place Sadek Long on the no fly list. They made that decision in 2011. That's what we believe. In 2016, it was the Terrorism Screening Center. It wasn't TSA that made the decision to remove him from the no fly list. It's the Terrorism Screening Center's procedures. It's their criteria about who is included and who is excluded from the no fly list. We challenge all of that. Are you challenging the adequacy of the redress process, of the TRIP process? I think, Your Honor, that plays out differently in accordance to the claim. For the substantive due process claim, the redress process may be relevant to how narrowly tailored or if they're using the least restrictive means procedures to administer the no fly list. But, you know, I don't think that for the procedural due process claim here, it's the same procedures that existed when he was placed persist to today. But the redress process was created by TSA, right? That's an order of the administrator. Well, first, the statute that created the creation of DHS TRIP directed the Department of Homeland Security to create DHS TRIP. And that's why it's called DHS TRIP and not called TSA TRIP, because that's where the statutory authority is. Your Honor, my speculation is that the reason they assigned the DHS TRIP final agency authority to TSA is just to benefit from 46-110's jurisdictional channeling statute, but- I think I just heard you say that's a process that's articulated by TSA administrator that goes through 46-110. Your Honor, although TSA plays a role in the TRIP process, and this is in their retelling of it as well, it's the terrorism screening center that really is doing all the legwork about- Hasn't the Sixth Circuit suggested that if someone's challenging the adequacy of the administrator as a party to that suit, presumably because it's- And they've talked about how there were orders of TSA that created that process. I think if you had an adequacy challenge like you did in Muharra that was specific to the plaintiff itself, that the TSA administrator looked at the evidence and balanced it inappropriately or gave credit where credit was not due. No, no, this is different. This is a procedural, right? Exactly. Just looking at the procedures, these are inadequate to protect anyone's rights for challenging the order that created these procedures. So the Sixth Circuit said, or highly suggested, that that would have to be channeled. Well, for example, Your Honor, the key thing in the administration of the procedures is the inclusion criteria of what the watch list allows to be included and doesn't allow to be or the no-fly list. That's administered by the Terrorism Screening Center and the FBI. It was not decided by TSA. And so if TSA is just inheriting the Terrorism Screening Center's watch list and no-fly list inclusion standard, they're going to be hamstrung and the process is going to be inadequate, not because of the particular procedures that TSA is doing, but because of the standard that they're operating. For example, if the standard, if the inclusion standard, to give a little bit of a ridiculous example, if the inclusion standard for the no-fly list was everybody that has red socks, TSA could set up very effective procedures for determining who does and does not have red socks. But the problem there wouldn't be with TSA's procedures. It would be with the criteria that we're putting people on the no-fly list because of their red socks. Now, take out red socks, but because they're Muslim, because they associate with Islamic practices. And then you have this current situation here, Your Honor. And if there are no further questions, that's all I have. Thank you, Your Honor. Thank you. Thank you, Your Honor. I just would like to just address a couple of points. The first is the plaintiff's claim that this is about constitutionally impermissible basis for watchlisting. The district court found, and this is Joint Appendix 138, the court cannot identify any individualized facts directly in support of this claim, meaning the religion claim, and declines to consider it. And then, again, on page 152, that the plaintiffs failed to discuss anywhere in their amended complaint the, this is the, it quoted some portion of the complaint talking about alleging Muslim-based placing on the list, and he said there's nothing anywhere in the amended complaint linking that to the plaintiff. And that is the point that we are trying to make, that effectively, once that part of the case was found to be, have no plausible basis in the complaint, all we are left with is a question of whether the evidence in the administrative record would be sufficient to support a no-fly list decision. And that is why we're sort of in the same world as we are as Muharrem, as opposed to Fikra. So there's nothing in the record that associates him with being of Islamic faith? No. No, he does say that he has the Islamic faith. The district court's finding was that there's nothing in the complaint tying the no-fly list decision to his Islamic faith, to him, his particularly. Were not the allegations of the frequency of the percentage of people on the fly list in terms of being associated with Islamic faith? That's no evidence of it? No, I'm not, that's not what the district court found. I know it's found, but is that, I mean, would that be even, have any semblance of what the facts are? Yes, but he's bringing an equal protection claim, and the equal protection claim, this is not like a disparate impact claim. This is about an equal protection violation for him, which he would need to say it was his listing was based on some impermissible factor about him. And he hasn't given any basis for thinking that that's the case that's plausible in his complaint. That's what the district court found. That's the reason why it dismissed the equal protection claim. And there was no, that's not contested in the brief. It's raised, I think, effectively for the first time here to try to revive that claim. And that's my only point, Your Honor. But again, even if you disagree with us and therefore think that we're not in Moharam and therefore the case remains live, we still have our argument that there was no statutory jurisdiction. And Judge Rushing, as you pointed out, the Sixth Circuit in the Moqtad case strongly suggested that a procedural claim belongs in the Court of Appeals. The D.C. Circuit in Busick held that both substantive and procedural challenges to no fly list status belong in the Court of Appeals. The Ninth Circuit in Casham held that the substantive claim belongs in the Court of Appeals. And there has not been any Court of Appeals that I'm aware of since the redress procedures were changed 10 years ago that has held to the contrary, that these no fly challenges to the TSA Administrator's Order belong in the District Court. They all uniformly hold that it belongs in the Court of Appeals. And that is something that the plaintiff did not even dispute until his reply brief. So the case from the Fikra case, right, went to the Supreme Court and came back to the Ninth Circuit. And it's, as I understand it, that case is proceeding in the District Court normally, right? That the Ninth Circuit didn't think that needed to be channeled to the D.C. Circuit. Well, the Ninth Circuit did an interesting thing that the Supreme Court wasn't, it wasn't actually before the Supreme Court, this particular issue. The Ninth Circuit agreed that if the person was challenging the TSA Order at the end of the redress process, that would belong in the Court of Appeals. And the District Court would have lacked jurisdiction. But what it said is this complaint, as it viewed that particular complaint based on particular facts and the way the complaint was worded, was a challenge only to the original TSC decision. And therefore, they thought that claim belonged in District Court because that was a TSC order versus a TSA order. Our view is that's not what this complaint is about. They asked to stay all the litigation to get a TSA order and then amended their complaint to make it clear that they were challenging the TSA order. So we're not in that world. We also think that on the merits, if all you're challenging is the TSC order, that that is not final agency action once you have already gone through the redress process. The only final order that exists at that point is the TSA order, not the TSC order. We also think a due process challenge solely focused on the initial decision would necessarily fail on the merits for other reasons. For example, it would necessarily ask for pre-deprivation process, which no court has ever held is available under the no-fly list and would mean it would have a whole host of consequences that I think would be unlawful. And it also would mean you would be bringing a due process challenge, even though you could to an initial decision, even though there was available process to you in terms of the strict redress process and a due process claim that says I haven't been provided process when there's available process you haven't taken the opportunity to pursue means that your claim would necessarily fail. So if they were only challenging the initial decision, we think that they might get out of the statutory jurisdiction problem, but they would create a whole host of merits problems that would defeat their claim. And I'm happy to entertain any other questions that the court may have. Thank you, counsel. I will come down. Great counsel proceeds to our next case.
judges: Roger L. Gregory, Allison J. Rushing, DeAndrea Gist Benjamin